THE HONORABLE BRIAN A. TSUCHIDA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. MJ-22-325 |
| Plaintiff, | ) | |
| | ) | RESPONSE TO GOVERNMENT'S |
| v. | ) | MOTION FOR DETENTION |
| | ) | |
| JOEY DAVID GEORGE, | ) | |
| Defendant. | ) | |
| | ) | |

Joey David George, through Assistant Federal Public Defender Mohammad Ali Hamoudi, respectfully submits this Response to the government's Motion for Detention, Dkt. 9, requesting that the Court release Mr. George on his own recognizance or, in the alternative, release him on conditions that will reasonably assure his appearance and address any safety considerations. Mr. George does not object to the Court imposing standard conditions of supervision, as well as requirements that he continue to meet with a mental health counselor[1] (as he has previously), not contact any of the alleged victims, and not possess a firearm (even though there is no evidence that he ever has).

---

[1] Defense counsel learned this morning that Mr. George no longer has health insurance. The Federal Defender's office as well as Pretrial Service can assist him in getting Apple Care.

RESPONSE TO GOVERNMENT'S
MOTION FOR DETENTION
(*United States v. George*, MJ22-325) - 1

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## I.     THE GOVERNMENT IS NOT ENTITLED TO A DETENTION HEARING UNDER THE LAW, SO MR. GEORGE MUST BE RELEASED.

The Supreme Court has made clear that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States. v. Salerno*, 481 U.S. 739, 755 (1987). That is why "[t]here can be no doubt that this Act clearly favors nondetention." *United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992) (emphasis added). Instead, the Bail Reform Act requires the Court to impose the "least restrictive" means of ensuring the appearance of the person and safety to the community. 18 U.S.C. § 3142(c)(1)(B). Only in "rare circumstances should release be denied," and any "doubts regarding the propriety of release should be resolved in the defendant's favor." *United States v. Gebro*, 948 F.2d 118, 1121 (9th Cir. 1991) (emphasis added); *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) ("The default position of the law, therefore, is that a defendant should be released pending trial.").

When Congress passed the Bail Reform Act, it was looking to detain fewer people pretrial, not more. Congress knew that federal charges are serious, that mandatory minimums are frequently asserted, and that sentencing exposure is enormous for most individuals accused in the federal system—yet, it still crafted a law acknowledging that detention is only appropriate for that "*small but identifiable group of particularly dangerous defendants* as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons." S. Rep. No. 225, 98th Cong., 1st Sess. 6–7, *reprinted in* U.S. Code Cong. & Ad. News 3189, 1983 WL 25404, at *3189 (emphasis added).

To further this goal, Congress restricted the government's ability to request detention. Specifically, the BRA provides that the government may request a bail

RESPONSE TO GOVERNMENT'S
MOTION FOR DETENTION
(*United States v. George*, MJ22-325) - 2

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

hearing only if certain conditions in § 3142 are present—*e.g.*, the defendant is charged with a crime of violence, faces a life sentence, death, or a drug offense with a 10-year or greater penalty, or poses a "serious risk" that he will "flee" or "obstruct justice." *See* 18 U.S.C. § 3142(f)(1)–(2).

If none of the conditions are met, then "*a pretrial detention hearing **may not be held***, and the defendant must be released pending trial under the conditions set forth in § 3142(a)." *United States v. Tadlock*, 399 F. Supp. 2d 747, 750 (S.D. Miss. 2005) (emphasis in original) (citing *United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992)); *United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) ("Absent one of these circumstances, detention is not an option."); *United States v. Ploof*, 851 F.2d 7, 9–10 (1st Cir. 1988) ("3142(f) does not authorize a detention hearing whenever the government thinks detention would be desirable, but rather limits such a hearing to the [six circumstances listed in § 3242(f)]").

Importantly, the Bail Reform Act does not permit the government to request a bail hearing on dangerousness alone—and courts may not detain defendants on dangerousness alone. *United States v. Twine*, 344 F.3d 987, 987 (9th Cir. 2003) ("We are not persuaded that the Bail Reform Act authorizes pretrial detention without bail based solely on a finding of dangerousness. This interpretation of the Act would render meaningless 18 U.S.C. § 3142(f)(1) and (2). Our interpretation is in accord with our sister circuits who have ruled on this issue."). Indeed, the Government must first establish one of the grounds in § 3142(f) "*as a prerequisite* to the court considering the factor of danger . . . ." Office of the United States Attorneys, *Criminal Resource Manual: Release and Detention Pending Judicial Proceedings*[2]; *see also Ploof*, 851 F.2d at 11 ("We believe, however, the structure of the statute and its legislative history

---

[2] Available at https://www.justice.gov/usam/criminal-resource-manual-26-release-and-detention-pending-judicial-proceedings-18-usc-3141-et (last visited July, 25, 2022).

RESPONSE TO GOVERNMENT'S
MOTION FOR DETENTION
(*United States v. George*, MJ22-325) - 3

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

make it clear that Congress did not intend to authorize preventive detention unless the judicial officer first finds that one of the § 3142(f) conditions for holding a detention hearing exists.") (citations omitted).

A.      **Section 3142(f)(2)(A) is inapplicable since the government has failed to establish by a clear preponderance of the evidence that Mr. George presents a serious risk of flight.**

The government claims eligibility alleging that there is a serious risk that Mr. George will flee. Dkt. 9 at 2. Risk of flight must be established by a "clear preponderance of the evidence." *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990). Though Mr. George does not have the burden of proof, the complaint alone contains clear evidence contradicting the government's claim. Mr. George appears to have been contacted by law enforcement with respect to the Maryland threats months ago, but he did not flee his home or the country. He did not appear to change his phone number. Also, he does not have a vehicle, a driver's license, a passport, or the financial means to flee. He has significant ties and a stable home in the district; he cares for his mother and rarely leaves the home.

The BRA's legislative history makes clear that detention based on serious flight risk is only appropriate under "extreme and unusual circumstances."[3] For example, the

---

[3] *See* Bail Reform Act of 1983: Rep. of the Comm. on the Judiciary, 98th Cong. 48 (1983) ("Under subsection f(2), a pretrial Detention Hearing may be held upon motion of the attorney for the government or upon the judicial officer's own motion in three types of cases. . . . [T]hose [types] involving . . . a serious risk that the defendant will flee . . . *reflect the scope of current case law that recognizes the appropriateness of denial of release in such cases*.") (emphasis added) (citing *United States v. Abrahams*, 575 F.2d 3, 8 (1st Cir. 1978)—which held that only a "*rare case of extreme and unusual circumstances* . . . justifies pretrial detention"—as representing the "current case law"); *see also Gavino v. McMahon*, 499 F.2d 1191, 1995 (2d Cir. 1974) (holding that in a noncapital case the defendant is guaranteed the right to pretrial release except in "extreme and unusual circumstances"); *United States v. Kirk*, 534 F.2d 1262, 1281 (8th Cir. 1976) (holding that bail can only be denied "in the exceptional case").

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

case relied on in the legislative history as extreme and unusual enough to justify detention on the grounds of serious risk of flight involved a defendant who was a fugitive and serial impersonator, had failed to appear in the past, and had recently transferred over a million dollars to Bermuda. *See Abrahams*, 575 F.2d at 4. The government can come nowhere close to demonstrating that Mr. George's risk of flight rises to a similar extreme or unusual level. In addition, a defendant should not be detained as a "serious risk" of flight when the risk of non-appearance can be mitigated by conditions of release. The only defendants who qualify for detention under § 3142(f)(2) are those who are "[t]rue flight risks"—defendants the government can prove are likely to flee the jurisdiction with the intention of thwarting the judicial process. *See, e.g.*, Lauryn Gouldyn, *Defining Flight Risk*, 85 U. Chi. L. Rev. 677, 724 (2017).

**B.      Section 3142(f)(1)(A) is inapplicable because the alleged § 875(c) violation is not a "crime of violence."**

The government next claims that the case is eligible for a detention hearing because making a threat is a "crime of violence" under 18 U.S.C. § 3156. While § 3142(f)(1)(A) permits the government to request detention in a case that involves a "crime of violence," Mr. George is not charged with a crime of violence. A "crime of violence" means—

> (A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another **[known as the "elements clause"]**; or
>
> (B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of

MOTION FOR DETENTION
(*United States v. George*, MJ22-325) - 5

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

1    another may be used in the course of committing the offense **[known as**
2    **the "residual clause"].**
3    18 U.S.C. § 3156(a)(4)(A).

4    When interpreting similarly worded statutes defining a "crime of violence," the
5    Supreme Court has repeatedly held that the residual clause is unconstitutionally vague.
6    *See, e.g.*, *United States v. Davis*, 139 S. Ct. 2319 (2019) (invalidating the residual
7    clause in 18 U.S.C. § 924(c)). Accordingly, the residual clause cannot be relied on to
8    determine whether the alleged § 875(c) violation qualifies as a "crime of violence." The
9    only question, then, is whether § 875(c) "has as an element of the offense the use,
10   attempted use, or threatened use of physical force against the person or property of
11   another." It does not.

12   Section 875(c) provides, "Whoever transmits in interstate or foreign commerce
13   any communication containing any ***threat to kidnap any person*** or any threat to injure
14   the person of another, shall be fined under this title or imprisoned not more than five
15   years, or both." *Id.* (emphasis added).

16   The government has already conceded in other cases that the substantive offense
17   of kidnapping does not qualify as a crime of violence. *See United States v. Lassiter*, No.
18   08-cr-376, ECF No. 198-200 (D.D.C. Sept. 6, 2019) (jointly requesting to vacate three
19   separate defendants' § 924(c) convictions predicated upon kidnapping, in violation of
20   18 U.S.C. § 1201(a)). It did so because it recognized that kidnapping can be
21   accomplished through non-physical means, such as by "inveigling" or "decoying." *See*
22   § 1201(a); *see also Jenkins*, 849 F.3d at 393 ("The government does not argue that the
23   first element—unlawfully seizing, confining, inveigling, decoying, kidnapping,
24   abducting, or carrying away—requires the use of force[.]"). In other words, because
25   kidnapping can be accomplished by deception instead of by physical force, it fails to
26   qualify as a crime of violence. *See Jenkins*, 849 F.3d at 393 ("Our sister circuits have

RESPONSE TO GOVERNMENT'S
MOTION FOR DETENTION
(*United States v. George*, MJ22-325) - 6

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

1   held that the similar crimes of false imprisonment and kidnapping by deception do not

2   have physical force as an element." (*quoting United States v. Swanson*, 55 Fed. App'x

3   761, 762 (7th Cir. 2003*); Delgado-Hernandez v. Holder*, 697 F.3d 1125, 1127 (9th Cir.

4   2012) (noting that "[t]he federal kidnapping statute has no force requirement"). It is

5   thus clear, and conceded by the government, that kidnapping is not a crime of violence.

6   Although there is not as much case law regarding whether a *threat to* kidnap qualifies

7   as a crime of violence, it too can be committed without any threat to use physical force.

8   For example, a father could call his ex-wife and tell her he's going to take the children

9   without any implicit or explicit threat of force—the threat could be as simple as he's

10   going to pick them up from school and drive them across state lines where he planned

11   to care for them far away from her, without the children's knowledge that they're being

12   kidnapped. *Cf. United States v. Smith*, 831 F.3d 793 (7th Cir. 2016) (upholding

13   conviction under § 1201(a) of defendant who "quietly lifted [her half-sister's newborn]

14   from his bassinette, placed him in the back of her car, and took off for Colorado").

15   While the *Santoro* case found that § 875(c) is a crime of violence, it is unpersuasive

16   because it did not consider whether a threat to kidnap qualified an offense as a crime of

17   violence; rather, without any real analysis, it simply concluded that the statute was

18   "divisible," and then only considered whether a threat to injure qualified. *See United*

19   *States v. Santoro*, 359 F. Supp. 3d 122, 127 n.11 (D. Me. 2019). But that was wrong.

20   In *Mathis v. United States*, 136 S. Ct. 2243 (2016), the Supreme Court recognized a

21   hierarchy of three methods for determining the divisibility of a statute, in declining

22   order of persuasiveness: First, look to court decisions to see if they have held that a

23   particular statute lists various means of committing an offense and further that a jury

24   need not agree unanimously on means. *Id*. at 2256. Second, look to the statutory

25   language to determine if "statutory alternatives carry different punishments"—if they

26   do, then they must be elements, making the statute divisible. *See id.* Third, as a means

RESPONSE TO GOVERNMENT'S
MOTION FOR DETENTION
(*United States v. George*, MJ22-325) - 7

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

1  of last resort, "in the absence of 'clear answers' from case law and other sources,"

2  *United States v. Diaz*, 865 F.3d at 117 (4th Cir. 2017), "peek at the record documents []

3  for the sole and limited purpose of determining whether the listed items are elements of

4  the offense." *Mathis*, 136 S. Ct. at 2256–57 (cleaned up). In determining divisibility,

5  grammatical construction, punctuation, and layout are irrelevant. *See id.* ("itemized

6  construction" does not determine divisibility). Ultimately, if there is any ambiguity in

7  the statute, it must be resolved in favor of indivisibility. *Id.* at 2257. Divisible statutes

8  are the exception, not the rule. *See, e.g., United States v. Sheffield*, 832 F.3d 296, 314

9  (D.C. Cir. 2016) (statutes are divisible in "rare instances").

10    *Santoro* failed to perform any steps of this analysis, which shows that § 875(c) is

11  not, in fact, divisible. First, federal jury instructions list "threats to kidnap" and "threats

12  to injure" as separate means—not elements—which the jury does not need to

13  unanimously agree upon. *See* 2 Modern Federal Jury Instructions, ¶ 31.02—Threats

14  Transmitted by Interstate Communication (18 U.S.C. § 875(c)) (stating that the

15  government must establish "[f]irst, that the defendant threatened to kidnap or to injure

16  [name of victim], as charged in the indictment"). Second, the statutory language shows

17  that § 875 creates four separate offenses that carry different punishments: § 875(a)

18  carries a 20-year-maximum penalty; § 875(b) carries a 20-year-maximum penalty; §

19  875(c) carries a 5-year-maximum penalty; and § 875(d) carries a 2-year-maximum

20  penalty. However, § 875(c) does *not* contain separate penalties within its particular

21  subdivision—whether one commits it by threats to kidnap or injure, the maximum

22  penalty is still 5 years. The analysis need go no further to conclude that § 875(c) is

23  indivisible.

24    Because § 875(c) is indivisible, the Court must "presume[] that the [charge]

25  'rested upon nothing more than the least of the acts' criminalized. *Moncrieffe v. Holder*,

26  569 U.S. 184, 190–91 (quoting *Johnson v. United States*, 599 U.S. 133, 137 (cleaned

RESPONSE TO GOVERNMENT'S
MOTION FOR DETENTION
(*United States v. George*, MJ22-325) - 8

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

up)); *see also United States v. Chapman*, 666 F.3d 220, 227 (4th Cir. 2012) ("when a defendant pleads guilty to a formal charge in an indictment which alleges conjunctively the disjunctive components of a statute, the rule is that the defendant admits to the least serious of the disjunctive statutory conduct."). In other words, this Court must presume that the charge entails the least serious conduct—*i.e.*, threats to kidnap—and for the reasons discussed above, a threat to kidnap categorically cannot qualify as a crime of violence. Because of this, § 875(c) categorically cannot qualify as a crime of violence. Therefore, this case is ineligible for detention based on § 3142(f)(1)(A).

Having failed to establish that the case is eligible for a detention hearing, Mr. George must be released immediately under whatever conditions the Court deems appropriate.

## II. THE COURT SHOULD BE COGNIZANT OF THE ASSUMPTIONS THAT FREQUENTLY ARISE IN THE AFTERMATH OF MASS SHOOTINGS GIVEN THE RECORD BEFORE THE COURT.

Assuming the case is eligible for a detention hearing, 18 U.S. Code § 3142(b) next provides that a judicial officer shall order the defendant's release on personal recognizance, or upon an unsecured personal bond, "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community."

However, if a judicial officer determines that own recognizance release is unwarranted, 18 U.S. Code § 3142(c) requires release of the defendant on conditions -- provided conditions can be imposed that will reasonable assure the defendant's appearance and community safety.  The Bail Reform Act requires the court *to set the least restrictive conditions or combination of conditions* that will reasonably assure the appearance of the person and protect the safety of the community. 18 U.S. Code § 3142(c)(2); *United States v. Motamedi*, 767 F.3d 1403, 1407 (9th Cir. 1985)(emphasis

added.)  Danger "shall" be established by clear and convincing evidence. *Id.* The weight of the evidence is afforded the *least* weight in the Court's analysis.  *Motamedi* at 1408.

The Pretrial Services Office has collected, verified, and provided the Court with a pretrial release report. Mr. George is approximately 38 years old with no criminal history other than a non-extraditable misdemeanor warrant pending out of the District Court for Montgomery County, Maryland, issued on October 11, 2021.  No summons was ever sent out with respect to the case.[4]

Mr. George finished formal elementary school but subsequently was homeschooled. Though Mr. George has had mental health struggles like anyone does, he has taken initiative seeking out counseling. Defense counsel has learned that Mr. George, on his own initiative, sought out counseling; however, he no longer has insurance coverage. There is no evidence Mr. George possesses a firearm or that his family possesses firearms.

While the Government may seek to argue that Ms. George's mental health challenges justify detention, any such argument would be based on misguided assumption and biases. Unfortunately, there is a common misperception that intellectual or mental disabilities can be linked a heightened risk for violence *See Mental Illness, Mass Shootings, and the Politics of American Firearms*, Jonathan M. Metzl & Kenneth T. MacLeish, 105 Am. J. Public Health (Feb. 2015) at 240–49 (attached as Exhibit 1).

It is important to recognize that "[i]n the real world, [mentally or intellectually disabled] persons are far more likely to be [socially or physically] assaulted by others or shot by the police than to commit violent crime themselves. In this sense, persons with

---

[4] Defense counsel contacted the Montgomery County Clerk, confirmed this information, obtained a copy of the docket, forwarded it to the pretrial services officer, and also provided the clerk's number to the office.

RESPONSE TO GOVERNMENT'S
MOTION FOR DETENTION
(*United States v. George*, MJ22-325) - 10

mental [or intellectual] illness might well have more to fear from 'us' than we do from 'them.'" *Id*. at 242. Such individuals are particularly vulnerable to targeting by and harm from other detainees during confinement. These concerns are all the more acute given the fact that the Federal Detention Center is understaffed and has often been overextended while managing issues related to the pandemic.

Separately, the Federal Detention Center is ill-equipped to provide ongoing and consistent mental or intellectual-disability care. Experts retained by the Federal Defender's Office who evaluate clients for the office often choose not to meet with clients at the Federal Detention Center because they do not want to be exposed to COVID-19.

Mr. George would also be particularly vulnerable in detention because of the high-profile nature of this case. The Government has already issued provocative statements to the press[5] and the media has circulated an image of Mr. George suggesting that he was in olive drab military attire during his initial appearance: [6]

---

[5] *See* Hurbuie Meko, *Man Charged With Threatening Racist Violence Against Buffalo Supermarket*, N.Y. Times, July 22, 2022 (available at https://www.nytimes.com/2022/07/22/nyregion/buffalo-supermarket-tops-threat.html).
[6] *See* Lynnanne Nguyen, *Man Facing Charges for Allegedly Calling in Threats to Shoot Black, Latino People*, KOMO, July 22, 2022 (available at https://katv.com/news/nation-world/man-facing-charges-for-allegedly-calling-in-threats-to-shoot-black-latino-people-lynnwood-washington-state-joey-david-george-tops-grocery-store-buffalo-new-york-mass-shooting).

RESPONSE TO GOVERNMENT'S
MOTION FOR DETENTION
(*United States v. George*, MJ22-325) - 11

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**



Mr. George was wearing a Super Mario Brothers shirt.

## III.    MR. GEORGE IS AN ESSENTIAL CARETAKER FOR HIS MOTHER.

Mr. George's arrest came as a shock to his mother and the rest of his family. See attached Exhibit 2.  Ms. George has health issues and needs a walker to move around. Mr. George is her primary caretaker. Even though he does not drive, he makes sure that his mother gets the transportation she need for medical appointments. Mr. George also cleans his mother's house, does her laundry, and goes grocery shopping for her. Ms. George reports that Mr. George left school after his father passed away from cancer to help care for her. She describes Mr. George as "a good son" who is very protective of her.

## IV.    CONCLUSION

Given the nature and circumstances of the offense and Mr. George's history and characteristics, the government cannot establish by clear and convincing evidence that he is a danger to anyone. Nor can the government establish by a preponderance of the evidence that Mr. George is a flight risk.

RESPONSE TO GOVERNMENT'S
MOTION FOR DETENTION
(*United States v. George*, MJ22-325) - 12

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

1   Under these circumstances, the Court should release Mr. George on his

2   recognizance with the following conditions: a no-contact order with respect to any of

3   the alleged victims, an agreement to resume mental health treatment, and a prohibition

4   on his possessing firearms.

5   DATED this 25th day of July, 2022.

6

7   Respectfully submitted,

8   *s/ Mohammad Ali Hamoudi*

9   Assistant Federal Public Defender
    Attorney for Joey David George

10

11   .

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26