The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOEY GEORGE,<br><br>Defendant. | NO. CR22-109RSM<br><br>**GOVERNMENT'S RESPONSE TO GEORGE'S APPEAL OF DETENTION ORDER** |

George terrorized individuals around the country with threats of racial violence. He orchestrated this campaign over a period of months. He continued his campaign after having multiple contacts with law enforcement. He escalated his conduct, calling multiple stores on the eve of his arrest, including targeting a Tops grocery store in Buffalo, the same chain where 10 people were murdered in a racially-motivated attack in May of this year. Magistrate Judge Tsuchida correctly determined that George is a threat to the community and a risk of flight. He should remain detained.

## BACKGROUND

### A.   The Buffalo Threats

On July 19, 2022, an individual called a Tops grocery store in Buffalo, New York. The caller, who identified himself as "Peter," spoke with an employee at the store. The caller asked how many Black people were in the store. He said he would make the news

United States' Opposition to Appeal of Detention Order – 1
*United States v. George*, CR22-109RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

if he shot and killed all of the Black people, including all of the women, children, and babies. He asked if the employee had cleared out the building. He said there was a chance he was already in the store, or somewhere nearby. He said that if he did not see anyone at the store, he would travel to the Jefferson Tops store, where a gunman had killed ten people in a racially-motivated attack in May 2022. During the July 19 call, "Peter" said he was a really good shot and could pick off people from the parking lot. He said he had assault rifles and other weapons.

The caller attempted to mask his phone number by using *67. According to phone records, the call was made from 206-579-2843. This phone number belongs to Joey George. On the following two days, George called at least three other stores in the Buffalo area and made similar threats.

B.  **The San Bruno Threat**

On May 12, 2022, a person, using the same telephone number, called Shari's Cafe and Pies in San Bruno, California. An employee of the restaurant answered the phone. The caller, who identified himself as "Tony," threatened to shoot any Black or Hispanic patrons in the restaurant if the restaurant did not close within twenty minutes. The San Bruno Police Department (SBPD) responded to the call. A SBPD Officer called back the number and spoke with a male who identified himself as "Tony Sumorrah." This individual provided a date of birth in October of 1982, but refused to provide his address. The individual told the SBPD Officer that he called the Shari's restaurant because he wanted to attack Black people and strike fear into the Bay Area's Black community. He stated Black people are not human, but rather "sub-humans." He said he was proud of his actions because he instilled fear in the employees and customers of the restaurant.

C.  **The Maryland Threat**

On September 11, 2021, a call placed from the same number was made to the Verilife Dispensary in Rockville, Maryland. An employee of the business answered the call and a male who identified himself as "David Lester" threatened to shoot and kill

United States' Opposition to Appeal of Detention Order – 2
United States v. George, CR22-109RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

"n\*\*\*ers" [redacted] at the business. The individual calling himself "Lester" told the employee that he was sick of "n\*\*\*ers" [redacted] harassing his girlfriend and he was on his way to the business to shoot and kill "n\*\*\*ers." [redacted]. The manager of the business attempted to speak with the caller and de-escalate the threats, but she became alarmed when "David Lester" threatened a particular employee at the business, accurately describing the employee's appearance, including their skin tone.

A Montgomery County Police Department (MCPD) officer called the number after the threats were made. The officer spoke with a male who identified himself as "David Lester." This person stated that he wanted to shoot any "n\*\*\*ers" [redacted] who were at the Verilife Dispensary upon his arrival.

On September 21, 2021, a MCPD detective telephoned the same number (206-579-2843) and asked to speak with George by name, after having identified him as the subscriber for George's telephone number. The male who answered the phone identified himself as George. The detective identified himself as a law enforcement officer with MCPD and proceeded to have a conversation with George. During the call, George admitted to making the telephone threats to Verilife Dispensary and stated, "I felt Black people do too much and have it coming. I did it for fear."

D.     **The Connecticut Threat**

On September 11, 2021, the user of the same number called a Denny's restaurant in Enfield, Connecticut. During the call, the male caller asked the employee who answered the telephone if there were any Black people in the restaurant. The employee responded that there likely were Black patrons because the restaurant invites customers of all races. The caller responded that he would throw a bomb through the window and "fuck everybody up." The caller made a second call that same day to the restaurant. This time, an Enfield Police Department (EPD) Officer spoke with the caller. The caller admitted to calling the restaurant earlier and directing the employee to clear the restaurant of Black people.

United States' Opposition to Appeal of Detention Order – 3
United States v. George, CR22-109RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### D. George's Post-Arrest Admissions

On July 21, 2022, George was arrested. George, post-*Miranda*, stated the following:

- He admitted calling the Shari's restaurant in California and threatening to "kill every Black person in the restaurant." He admitted saying that if the restaurant did not close in twenty minutes, he would go there and shoot all of the Black people in the restaurant.

- He admitted calling two Tops supermarkets in Buffalo. He said, "I mean, there was a mass shooting two months ago, that was on. That's how I knew about it. I never knew that store existed until I seen the mass shooting. And I guess I was inspired to scare them."

- He admitted to calling the Shari's and Tops supermarkets for the purpose of scaring Black people, and for the purpose of getting them to close down for at least a short period of time.

- He admitted to making calls to businesses around the country, including to a Denny's in Connecticut.

- He admitted placing all of these calls from his residence in Lynnwood, Washington.

- He admitted that what he had done was wrong, but repeatedly expressed that he had racist beliefs.

- He admitted to posting racist statements on social media, but said he avoided making any threats to kill on the internet to avoid "leaving a paper trail."

### E. The Detention Hearing

On July 21, 2022, George was arrested. On July 25, 2022, the Court held a detention hearing. At the hearing, the Court found:

> Obviously, we have some positive factors. You have lived a long time in Western Washington. You have got a mother. You're obviously close with her, so that weighs in your favor. But I think on the other hand, there's no way around it. This is a spectacularly concerning allegation. And I think the Government has the stronger argument of saying there's a difference between a person who says something off the cuff in the heat of the

United States' Opposition to Appeal of Detention Order – 4
*United States v. George*, CR22-109RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

moment, a one-time thing.  Maybe they were drinking and maybe they were having an argument, but the Complaint is an allegation that over a number of months beginning last September, there was a series of phone calls to different places repetitively asking about, "Are there minorities there or black people or Mexican people or Hispanics," and basically saying, "If there are, I'm going to shoot or kill these people."  And making sort of derogatory comments about the fact that they're not white people.

So once you begin seeing this whole pattern of, it starts in September according to the Complaint, and it just continues all the way to this month.  And, apparently, the police and you spoke recently and there might have been even more calls that they didn't know about and weren't reported in the Complaint.  So I think the pattern of consistent threats allegedly made all over the United States is just one that we can't duck and one that, really, I think cuts against you.  To the extent you allegedly made statements, making admissions, of course that weighs in the Government's favor in terms of the weight of the evidence.

Your lawyer is correct.  This is not a trial.  I am not here to decide if you are guilty or if you are innocent or what should happen.  All of these things are being considered only in the context of a release or detention decision and for nothing else.

Mr. George, I know that life can be difficult and I know you have had your own personal challenges, according to the Pretrial report.  That always causes some instability, and I think instability is not a good factor in terms of whether you show up or don't show up.  You already got actually a warrant for your arrest issued by a state court in Maryland for phone calls allegedly made there.  So there is more than this case already pending against you.  I think your lawyer has argued -- I think Mr. Woods actually said, "I'm not here to say I know for sure what's going to happen."  But I think what the challenge here, of course, is, is that the pattern can't be avoided.  And I do know that you did talk to police officers allegedly on the phone, but the calls continued.  So having police contact didn't necessarily stop the behavior.  All right.  So you have some positive things, but I think on balance the negative outweigh it, and I have to conclude that I cannot release you, given the nature of the charges in terms of the danger you may present to the community.  It's kind of sketchy about your risk of flight.  You have some instability, you have a warrant for your arrest, and those are not positive factors, too.

So I will issue a detention order today, Mr. George, all right? And what that means is that you will be held at the Federal Detention Center. . . .

United States' Opposition to Appeal of Detention Order – 5
*United States v. George*, CR22-109RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Dkt. 26, Ex. A, 18-21.

After the hearing, the Court entered a detention order. Dkt. 14. The Court stated:

> Defendant, Joey David George, is charged by complaint with two counts of making Interstate Threats in violation of 18 U.S.C. § 875(c). The complaint alleges Mr. George made phone calls on July 19, 2022, July 20, 2022, January 16, 2022, May 12, 2022, September 21, 2021, September 11, 2021 to various stores, restaurants, and other establishments in the states of New York, Maryland, California, and Washington. In each of these calls Mr. George made statements to the effect that he was going to shoot and kill African American or Hispanic individuals. Mr. George was contacted by state law enforcement officers, and he admitted making the calls. However, even after speaking with law enforcement officers, Mr. George continued to make phone call allegedly threatening to kill certain individuals. The alleged conduct establishes a pattern of deliberate actions to make threats to kill people. This is not a case in which the allegation involved fleeting conduct or was made once in the heat of the moment. The United States proffered that when the FBI arrested Mr. George, he admitted making the threats to kill and disclosed other threatening calls he made to establishments in Houston, Georgia, and Connecticut. The nature of the offense is thus extremely serious and does not support release. . . . .
>
> The Court has also considered the fact that Mr. George lives with his mother, and thus has ties to Western Washington, and has no criminal history. These are obviously factors that weigh in favor of release. But the Court also notes Mr. George struggles with emotional or mental health challenges, admits to daily use of Cannabis, and has had on-and-off mental health treatment, and that some of his family members tended to minimize his alleged conduct. His mental health problems and drug use indicate he is unstable especially considering the allegations that he continued to make threats even after being contacted by law enforcement. Mr. George also faces criminal charges in the state of Maryland and the court there issued a warrant for his arrest which is still pending. In sum, while there are some positive factors such as ties to the community and lack of criminal history, the other factors the court considers weigh against release. The Court accordingly concludes that Mr. George is both a danger to the community and poses a risk of flight and must be detained.

*Id.*

On September 1, 2022, George moved to reopen detention. Dkt. 26. George offered two things as a change of circumstances justifying reopening detention. First,

United States' Opposition to Appeal of Detention Order – 6
*United States v. George*, CR22-109RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

George noted that Probation had opposed George's release on the ground that two family members who lived at George's proposed residence refused to cooperate with Probation. George noted that these two individuals had left the residence. Second, George stated that he had filed a motion to dismiss the indictment on First Amendment grounds, which he claimed showed that he "did not commit a criminal offense."[1]  *Id.* at 2.  Magistrate Judge Tsuchida denied the motion to reopen detention, focusing on the two family members who had left the residence, stating:

> The Court finds this new development does not support reopening detention and release. At the detention hearing the Court considered the factors in favor of release such as Defendant lived with his mother, has ties to Western Washington, and no criminal history. However, the Court detained Defendant because despite these favorable factors, the Court found detention should be ordered based upon the gravity of the offense conduct; the long term and widespread nature of the alleged criminal conduct which evidenced a pattern of deliberate actions to make threats to kill; Defendant's alleged continuation of making threats despite being contacted by law enforcement; and Defendant's drug use and mental health problems. The fact Defendant can live at this mother's home does not undermine the other factors upon which the Court relied in ordering detention.

Dkt. 27 at 1-2.

George has now filed a motion to appeal the detention order.

## **LEGAL STANDARD**

Title 18, United States Code, Section 3145(b) permits the defendant to seek review of a detention order.  If a review is undertaken, the district court must conduct a *de novo* review of the detention order, and it need not give deference to the factual findings or the ultimate conclusion of the Magistrate Judge.  *See United States v. Koenig*, 912 F.2d 1990, 1191-92 (9th Cir. 1990).  However, the Ninth Circuit has made clear that the precise nature of the review in each case is left to the sound discretion of the district court.  *Id.* ("Clearly, the district court is not required to start over in every case, and proceed as if

---

[1] The Court subsequently denied the motion to dismiss. Dkt. 30.

United States' Opposition to Appeal of Detention Order – 7
*United States v. George*, CR22-109RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the magistrate's decision and findings did not exist."). Moreover, the decision as to whether to hold oral argument is left to the district court's discretion. *Id.* ("If the performance of that function makes it necessary or desirable for the district judge to hold additional evidentiary hearings, it may do so. . .").

The key question in the detention analysis in this case is whether any condition or combination of conditions will reasonably assure the appearance of the defendant as required, and the safety of any other person and the community. 18 U.S.C. § 3142(f). The standards of proof differ with respect to the "risk of flight" and "dangerousness" prongs of the statute. A detention order based on the defendant's risk of flight ordinarily must be supported by only a preponderance of the evidence. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A detention order based on the defendant's dangerousness generally must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f).

The Court must evaluate several enumerated statutory factors to determine "whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community. . . ." 18 U.S.C. § 3142(g). These factors include:

(1) the nature and circumstances of the offense charged . . . .,

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

   (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

   (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

United States' Opposition to Appeal of Detention Order – 8
*United States v. George*, CR22-109RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

(4)  the nature and seriousness of the danger to any person or the community that would be posed by the person's release.  *Id.*

# ARGUMENT

As Magistrate Judge Tsuchida correctly concluded, the factors here weigh in favor of detention.

### *Nature and Circumstances of the Offense*

The instant offense was extremely serious.  George terrorized people throughout the country by repeatedly threatening to shoot and kill people.  His threats spanned multiple months and were racially-based.  He targeted the Buffalo community on the heels of one of the most horrific mass shootings in recent memory.  He brought terror to workers who were tasked with answering the store phone, along with countless others who worked at the businesses.  He tied up law enforcement resources investigating the threats that could have been devoted to other emergencies and law enforcement matters.

### *The Weight of the Evidence Against the Person*

The evidence against George is overwhelming.  He gave a videotaped confession. He made the relevant calls from his phone that he subscribed to under his real name. Geolocation data shows that George made the calls at or near his residence.

### *History and Characteristics of the Person*

George continued to make the calls after being contacted by multiple law enforcement officers.  During his post-arrest interview, George admitted to holding racist beliefs, which drove him to make the calls.  It's not clear the nature of his family support—his brother-in-law and nephew, who lived with George, refused to allow Probation to run their criminal histories and generally minimized George's conduct. George reported regular marijuana use, and that he suffered from mental health issues.[2]

---

[2] George takes issue with his marijuana use, noting it is legal in Washington.  He also claims that nothing in his mental health history suggests he would be a danger.  George misses the point—although his marijuana use and mental struggles might not, standing alone, cause considerable concern—they exacerbate the risks that he otherwise presents.

United States' Opposition to Appeal of Detention Order – 9
*United States v. George*, CR22-109RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*Danger to the Community if Released*

George cannot be trusted to follow the rules and cease his behavior if released. After all, he continued to make threats—and indeed *escalated* his behavior—after being contacted by law enforcement on multiple occasions. And the nature of his conduct was so shocking—*targeting the Buffalo community by calling a Tops supermarket*—that it reflects someone who either was out of control, or motivated by deep hate, or both.

*The Defense Arguments*

George characterizes Magistrate Judge's Tsuchida's order as "illegal," claiming that it "transformed pre-trial detention into punishment." Dkt.31 at 1. Judge Tsuchida did not "punish" George, and nothing in his order or statement from the bench suggests as much. Rather, he properly found that George was both a danger to the community and a risk of flight.

George also states that his mother is willing to serve as a third-party custodian and that he is willing to have his telephone and internet use monitored. But these proposed conditions fall short. George committed the conduct while living with his mother—she clearly was no curb on his behavior. Moreover, his mother is believed to be in poor health with mobility issues, casting doubt on whether she could be an effective custodian. And monitoring would not stop George from using someone else's phone or other device to make threats.

Finally, George suggests yet again that he has a winning First Amendment argument. He doesn't. He threatened to kill people, and, as the Supreme Court has repeatedly held: "[T]hreats of violence are outside the First Amendment . . . ." *R.A.V. v. City of St. Paul, Minn.,* 505 U.S. 377, 388 (1992). George faces almost certain conviction if he proceeds to trial, giving him an incentive to flee.

United States' Opposition to Appeal of Detention Order – 10
*United States v. George*, CR22-109RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## **CONCLUSION**

For the foregoing reasons, the Court should deny the motion to reopen detention.

DATED this 20th day of September, 2022.

Respectfully submitted,

NICHOLAS W. BROWN
United States Attorney

*s/ Thomas M. Woods*
THOMAS M. WOODS
REBECCA S. COHEN
Assistant United States Attorneys
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: 206-553-4312
Email: thomas.woods2@usdoj.gov

United States' Opposition to Appeal of Detention Order – 11
*United States v. George*, CR22-109RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970