Hon. Ricardo S. Martinez

FILED _____ ENTERED
LODGED _____ RECEIVED

NOV 07 2022

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

JOEY GEORGE,

Defendant.

NO. CR22-109-RSM

**PLEA AGREEMENT**

The United States, through United States Attorney Nicholas W. Brown and Assistant United States Attorneys Thomas M. Woods and Rebecca S. Cohen of the Western District of Washington and defendant Joey George and his attorneys, Mohammad Ali Hamoudi and Gregory Geist, enter into the following Plea Agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A) and 11(c)(1)(B).

1. **The Charges**. Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enters a plea of guilty to each of the following charges contained in the Indictment.

    a.    Interstate Threats, as charged in Count 1, in violation of Title 18, United States Code, Section 875(c).

    b.    Interference with Federally Protected Activity, as charged in Count 5, in violation of Title 18, United States Code, Section 245(b)(2)(F).

Plea Agreement - 1
United States v. George, CR22-109-RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

By entering these pleas of guilty, Defendant hereby waives all objections to the form of the charging document. Defendant further understands that before entering any guilty plea, Defendant will be placed under oath. Any statement given by Defendant under oath may be used by the United States in a prosecution for perjury or false statement.

2. **Elements of the Offenses**. The elements of the offenses to which Defendant is pleading guilty are as follows:

   a. The elements of Interstate Threats, as charged in Count 1, are as follows:

   First, the defendant knowingly transmitted in interstate commerce a communication containing a threat to injure someone; and

   Second, such communication was transmitted for the purpose of issuing a true threat.

   b. The elements of Interference with Federally Protected Activity, as charged in Count 5, are as follows:

   First, the defendant made a threat of force;

   Second, the defendant willfully attempted to intimidate or interfere with a person or persons on account of their race, color, or national origin;

   Third, the defendant acted because of the race, color, or national origin of that person(s);

   Fourth, the defendant intended to interfere with the person(s) enjoying the goods, services, facilities, privileges, advantages, or accommodations of any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility which serves the public and which is principally engaged in selling food or beverages for consumption on the premises; and

   Fifth, the defendant threatened to use a dangerous weapon in connection with the offense.

Plea Agreement - 2
*United States v. George*, CR22-109-RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

3. **The Penalties**. Defendant understands that the statutory penalties applicable to the offenses to which Defendant is pleading guilty are as follows:

a. For the offense of Interstate Threats, as charged in Count 1: A maximum term of imprisonment of up to five years, a fine of up to $250,000, a period of supervision following release from prison of up to three years, and a mandatory special assessment of $100 dollars. If a probationary sentence is imposed, the probation period can be for up to five years.

b. For the offense of Interference with Federally Protected Activity, as charged in Count 5: A maximum term of imprisonment of up to ten years, a fine of up to $250,000, a period of supervision following release from prison of up to three years, and a mandatory special assessment of $100 dollars. If a probationary sentence is imposed, the probation period can be for up to five years.

Defendant understands that supervised release is a period of time following imprisonment during which Defendant will be subject to certain restrictive conditions and requirements. Defendant further understands that, if supervised release is imposed and Defendant violates one or more of the conditions or requirements, Defendant could be returned to prison for all or part of the term of supervised release that was originally imposed. This could result in Defendant serving a total term of imprisonment greater than the statutory maximum stated above.

Defendant understands that as a part of any sentence, in addition to any term of imprisonment and/or fine that is imposed, the Court may order Defendant to pay restitution to any victim of the offense, as required by law.

Defendant further understands that the consequences of pleading guilty may include the forfeiture of certain property, either as a part of the sentence imposed by the Court, or as a result of civil judicial or administrative process.

Defendant agrees that any monetary penalty the Court imposes, including the special assessment, fine, costs, or restitution, is due and payable immediately and further

Plea Agreement - 3
United States v. George, CR22-109-RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

agrees to submit a completed Financial Disclosure Statement as requested by the United States Attorney's Office.

4. **Immigration Consequences.** Defendant recognizes that pleading guilty may have consequences with respect to Defendant's immigration status if Defendant is not a citizen of the United States. Under federal law, a broad range of crimes are grounds for removal, and some offenses make removal from the United States presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, and Defendant understands that no one, including Defendant's attorney and the Court, can predict with certainty the effect of a guilty plea on immigration status. Defendant nevertheless affirms that Defendant wants to plead guilty regardless of any immigration consequences that Defendant's guilty pleas may entail, even if the consequence is Defendant's mandatory removal from the United States.

5. **Rights Waived by Pleading Guilty.** Defendant understands that by pleading guilty, Defendant knowingly and voluntarily waives the following rights:

   a. The right to plead not guilty and to persist in a plea of not guilty;

   b. The right to a speedy and public trial before a jury of Defendant's peers;

   c. The right to the effective assistance of counsel at trial, including, if Defendant could not afford an attorney, the right to have the Court appoint one for Defendant;

   d. The right to be presumed innocent until guilt has been established beyond a reasonable doubt at trial;

   e. The right to confront and cross-examine witnesses against Defendant at trial;

   f. The right to compel or subpoena witnesses to appear on Defendant's behalf at trial;

Plea Agreement - 4
*United States v. George*, CR22-109-RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

  g. The right to testify or to remain silent at trial, at which trial such silence could not be used against Defendant; and

  h. The right to appeal a finding of guilt or any pretrial rulings.

6. **United States Sentencing Guidelines.** Defendant understands and acknowledges that the Court must consider the sentencing range calculated under the United States Sentencing Guidelines and possible departures under the Sentencing Guidelines together with the other factors set forth in Title 18, United States Code, Section 3553(a), including: (1) the nature and circumstances of the offenses; (2) the history and characteristics of Defendant; (3) the need for the sentence to reflect the seriousness of the offenses, to promote respect for the law, and to provide just punishment for the offenses; (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of Defendant; (6) the need to provide Defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records. Accordingly, Defendant understands and acknowledges that:

  a. The Court will determine Defendant's Sentencing Guidelines range at the time of sentencing;

  b. After consideration of the Sentencing Guidelines and the factors in 18 U.S.C. 3553(a), the Court may impose any sentence authorized by law, up to the maximum term authorized by law;

  c. The Court is not bound by any recommendation regarding the sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Department, or by any stipulations or agreements between the parties in this Plea Agreement; and

Plea Agreement - 5
*United States v. George*, CR22-109-RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

      d.      Defendant may not withdraw a guilty plea solely because of the sentence imposed by the Court.

    7.    **Ultimate Sentence.** Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

    8.    **Statement of Facts.** The parties agree on the following facts. Defendant admits Defendant is guilty of the charged offenses:

      a.      Between July 18 and July 21, 2022, from a location at or near his residence in Lynnwood, Washington, JOEY GEORGE placed a series of calls to businesses in Buffalo, New York. In one call on July 19, 2022, GEORGE asked the employee at the Elmwood Avenue Tops Friendly Market who answered the phone how many Black people were in the store, and said he would make the news if he killed all of the Black people, including the women, children, and babies. He said he did not care as long as they were all dead. He warned the employee to take him seriously. Later in the call, GEORGE asked the employee if the store had been cleared, and said there was a chance he was already in the store, or somewhere nearby. GEORGE told the employee that if he did not see anybody in the store he would drive to another Tops supermarket in Buffalo, and that he was a really good shot and could "pick people off" from the parking lot. GEORGE told the employee that he had assault rifles and other ammunition. He said he would see the employee soon, but, that since she sounded White, he probably would not shoot her. The second Tops location that GEORGE mentioned was the site of a racially-motivated mass shooting in May 2022.

      b.      On July 21, 2022, GEORGE called the Elmwood Avenue Tops supermarket again. During this call GEORGE told the employee who answered the phone that he was going to shoot all of the "n\*\*\*ers" [redacted] and spare the White and Asian people. GEORGE said he would come to the store in five minutes if it was not closed. He said that he had an AR-15 with plenty of clips.

Plea Agreement - 6
*United States v. George*, CR22-109-RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

  c. On July 21, 2022, GEORGE called two other stores in the Buffalo area. The employees reported to law enforcement that GEORGE made similar threatening statements.

  d. On May 12, 2022, from a location at or near his residence in Lynnwood, Washington, GEORGE placed a threatening phone call to Shari's Cafe & Pies in San Bruno, California. During this call GEORGE identified himself as "Tony" and threatened to shoot any Black or Hispanic patrons if the restaurant did not close within twenty minutes. GEORGE later admitted to a law enforcement offer who used caller ID to call him back that he had made the threatening phone call. GEORGE told the officer that he made the threat because he wanted to attack Black people and strike fear into the Bay Area's Black community. GEORGE said he was proud of his actions because he instilled fear in the employees and customers of the restaurant.

  e. On September 11, 2021, from a location at or near his residence in Lynnwood, Washington, GEORGE placed a threatening phone call to a cannabis dispensary in Rockville, Maryland. GEORGE identified himself to the employee who answer the phone as "David Lester" and threatened to shoot and kill "n***ers" [redacted] at the business. On subsequent phone calls with local law enforcement officers who obtained his phone number through caller ID, GEORGE admitted making the threats and said he wanted to shoot any "n***ers" [redacted] who were at the dispensary upon his arrival. GEORGE also said that he made the threats for fear and that he "felt Black people do too much and have it coming." In response to the threats, the dispensary closed for the remainder of the day and the next day. The dispensary also hired additional security to protect against potential threats. The dispensary incurred over $50,000 in expenses and lost income.

  f. Also on September 11, 2021, from a location at or near his residence in Lynnwood, Washington, GEORGE placed a threatening phone call to a Denny's restaurant in Enfield, Connecticut. GEORGE asked the employee who answered the

Plea Agreement - 7
United States v. George, CR22-109-RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

telephone if there were any Black people in the restaurant. The employee responded that there likely were Black patrons because the restaurant invites customers of all races. GEORGE then threatened an act of violence at the restaurant.

       g.     GEORGE made the above-referenced threats because he wanted to instill fear in the employees and patrons of the businesses he called, to prevent Black patrons of the businesses from being served by the businesses, and to scare away the Black customers and place them in fear. In so doing, GEORGE made the threats because of the race, color, or national origin of the patrons of the businesses he called, and because of the race, color, or national origin of these patrons. He had other motivations as well for making the calls.

       h.     The threatening statements made by GEORGE and discussed above were serious expressions of an intention to inflict bodily harm on other people. GEORGE intended, among other things, to communicate the threats with knowledge that the statements would be viewed as authentic threats.

       i.     GEORGE selected the businesses to which he chose to make threatening calls because, among other things, he believed they were located in areas with a high percentage of Black residents.

The parties agree that the Court may consider additional facts contained in the Presentence Report (subject to standard objections by the parties) and/or that may be presented by the United States or Defendant at the time of sentencing, and that the factual statement contained herein is not intended to limit the facts that the parties may present to the Court at the time of sentencing.

9. **Acceptance of Responsibility.** At sentencing, *if* the Court concludes Defendant qualifies for a downward adjustment for acceptance of responsibility pursuant to USSG § 3E1.1(a) and Defendant's offense level is 16 or greater, the United States will make the motion necessary to permit the Court to decrease the total offense level by three (3) levels pursuant to USSG §§ 3E1.1(a) and (b), because Defendant has assisted the

Plea Agreement - 8
*United States v. George*, CR22-109-RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

United States by timely notifying the United States of Defendant's intention to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

10. **Agreed Recommendation Regarding Imprisonment**. Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the government agrees to recommend to the Court that the appropriate term of imprisonment is no higher than the high end of the advisory guidelines range calculated by the Court at the time of sentencing. Defendant is not bound by this recommendation and may recommend any term of imprisonment he sees fit. Defendant understands that these recommendations are not binding on the Court and the Court may reject the recommendations of the parties and may impose any term of imprisonment up to the statutory maximum penalty authorized by law. Defendant further understands that Defendant cannot withdraw a guilty plea simply because of the sentence imposed by the Court. Except as otherwise provided in this Plea Agreement, the parties are free to present arguments regarding any other aspect of sentencing.

11. **Restitution.** Defendant agrees that the Court can order Defendant to pay restitution to the victims of Defendant's crimes and, in exchange for the agreements by the United States contained in this Plea Agreement, Defendant agrees that restitution in this case should not be limited to the offenses of conviction. Defendant is aware that the United States will present evidence supporting an order of restitution for all losses caused by all of Defendant's criminal conduct known to the United States at the time of Defendant's guilty pleas to include those losses resulting from crimes not charged or admitted by Defendant in the Statement of Facts. In exchange for the promises by the United States contained in this Plea Agreement, Defendant agrees that Defendant will be responsible for any order by the District Court requiring the payment of restitution for such losses.

    a. The full amount of restitution shall be due and payable immediately on entry of judgment and shall be paid as quickly as possible. If the Court finds that the

Plea Agreement - 9
United States v. George, CR22-109-RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

defendant is unable to make immediate restitution in full and sets a payment schedule as contemplated in 18 U.S.C. § 3664(f), Defendant agrees that the Court's schedule represents a minimum payment obligation and does not preclude the U.S. Attorney's Office from pursuing any other means by which to satisfy the defendant's full and immediately-enforceable financial obligation, including, but not limited to, by pursuing assets that come to light only after the district court finds that the defendant is unable to make immediate restitution.

        b.      Defendant agrees to disclose all assets in which Defendant has any interest or over which Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or third party. Defendant agrees to cooperate fully with the United States' investigation identifying all property in which Defendant has an interest and with the United States' lawful efforts to enforce prompt payment of the financial obligations to be imposed in connection with this prosecution. Defendant's cooperation obligations are: (1) before sentencing, and no more than 30 days after executing this Plea Agreement, truthfully and completely executing a Financial Disclosure Statement provided by the United States Attorney's Office and signed under penalty of perjury regarding Defendant's and Defendant's spouse's financial circumstances and producing supporting documentation, including tax returns, as requested; (2) providing updates with any material changes in circumstances, as described in 18 U.S.C. § 3664(k), within seven days of the event giving rise to the changed circumstances; (3) authorizing the United States Attorney's Office to obtain Defendant's credit report before sentencing; (4) providing waivers, consents or releases requested by the U.S. Attorney's Office to access records to verify the financial information; (5) authorizing the U.S. Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office; (6) submitting to an interview or deposition regarding Defendant's Financial Statement and supporting documents before sentencing (if requested by the United States Attorney's Office), and fully and truthfully answering questions during such interview or

Plea Agreement - 10
*United States v. George*, CR22-109-RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

deposition; and (7) notifying the United States Attorney's Office before transferring any interest in property owned directly or indirectly by Defendant, including any interest held or owned in any other name, including all forms of business entities and trusts.

   c. The parties acknowledge that voluntary payment of restitution prior to the adjudication of guilt is a factor the Court considers in determining whether Defendant qualifies for acceptance of responsibility pursuant to USSG § 3E1.1(a). In addition, in any event, the government will consider Defendant's cooperation regarding restitution in making its sentencing recommendation.

  12. **Non-Prosecution of Additional Offenses.** As part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington agrees not to prosecute Defendant for any additional offenses known to it as of the time of this Plea Agreement based upon evidence in its possession at this time, and that arise out of the conduct giving rise to this investigation, and moves to dismiss the remaining counts in the Indictment at the time of sentencing. In this regard, Defendant recognizes the United States has agreed not to prosecute all of the criminal charges the evidence establishes were committed by Defendant solely because of the promises made by Defendant in this Plea Agreement. Defendant agrees, however, that for purposes of preparing the Presentence Report, the United States Attorney's Office will provide the United States Probation Office with evidence of all conduct committed by Defendant.

  Defendant agrees that any charges to be dismissed before or at the time of sentencing were substantially justified in light of the evidence available to the United States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant with a basis for any future claims under the "Hyde Amendment," Pub. L. No. 105-119 (1997).

  13. **Breach, Waiver, and Post-Plea Conduct.** Defendant agrees that, if Defendant breaches this Plea Agreement, the United States may withdraw from this Plea Agreement and Defendant may be prosecuted for all offenses for which the United States

Plea Agreement - 11  
*United States v. George*, CR22-109-RSM

UNITED STATES ATTORNEY  
700 STEWART STREET, SUITE 5220  
SEATTLE, WASHINGTON 98101  
(206) 553-7970

has evidence. Defendant agrees not to oppose any steps taken by the United States to nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea Agreement. Defendant also agrees that, if Defendant is in breach of this Plea Agreement, Defendant has waived any objection to the re-institution of any charges that previously were dismissed or any additional charges that had not been prosecuted.

Defendant further understands that if, after the date of this Plea Agreement, Defendant should engage in illegal conduct, or conduct that violates any conditions of release or the conditions of confinement (examples of which include, but are not limited to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, the Pretrial Services Officer, Probation Officer, or Court), the United States is free under this Plea Agreement to file additional charges against Defendant or to seek a sentence that takes such conduct into consideration by requesting the Court to apply additional adjustments or enhancements in its Sentencing Guidelines calculations in order to increase the applicable advisory Guidelines range, and/or by seeking an upward departure or variance from the calculated advisory Guidelines range. Under these circumstances, the United States is free to seek such adjustments, enhancements, departures, and/or variances even if otherwise precluded by the terms of the Plea Agreement.

14. **Waiver of Appellate Rights and Rights to Collateral Attacks.** Defendant acknowledges that, by entering the guilty pleas required by this Plea Agreement, Defendant waives all rights to appeal from Defendant's conviction, and any pretrial rulings of the Court, and any rulings of the Court made prior to entry of the judgment of conviction. Defendant further agrees that, provided the Court imposes a custodial sentence that is within or below the Sentencing Guidelines range (or the statutory mandatory minimum, if greater than the Guidelines range) as determined by the Court at the time of sentencing, Defendant waives to the full extent of the law:

Plea Agreement - 12
United States v. George, CR22-109-RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

a.  Any right conferred by Title 18, United States Code, Section 3742, to challenge, on direct appeal, the sentence imposed by the Court, including any fine, restitution order, probation or supervised release conditions, or forfeiture order (if applicable); and

b.  Any right to bring a collateral attack against the conviction and sentence, including any restitution order imposed, except as it may relate to the effectiveness of legal representation.

This waiver does not preclude Defendant from bringing an appropriate motion pursuant to 28 U.S.C. § 2241, to address the conditions of Defendant's confinement or the decisions of the Bureau of Prisons regarding the execution of Defendant's sentence.

If Defendant breaches this Plea Agreement at any time by appealing or collaterally attacking (except as to effectiveness of legal representation) the conviction or sentence in any way, the United States may prosecute Defendant for any counts, including those with mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea Agreement.

15.  **Voluntariness of Plea.**  Defendant agrees that Defendant has entered into this Plea Agreement freely and voluntarily, and that no threats or promises were made to induce Defendant to enter a plea of guilty other than the promises contained in this Plea Agreement or set forth on the record at the change of plea hearing in this matter.

16.  **Statute of Limitations.**  In the event this Plea Agreement is not accepted by the Court for any reason, or Defendant breaches any of the terms of this Plea Agreement, the statute of limitations shall be deemed to have been tolled from the date of the Plea Agreement to: (1) thirty (30) days following the date of non-acceptance of the Plea Agreement by the Court; or (2) thirty (30) days following the date on which a breach of the Plea Agreement by Defendant is discovered by the United States Attorney's Office.

Plea Agreement - 13
*United States v. George*, CR22-109-RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

17. **Completeness of Plea Agreement**. The United States and Defendant acknowledge that these terms constitute the entire Plea Agreement between the parties, except as may be set forth on the record at the change of plea hearing in this matter. This Plea Agreement binds only the United States Attorney's Office for the Western District of Washington. It does not bind any other United States Attorney's Office or any other office or agency of the United States, or any state or local prosecutor.

Dated this 7th day of November, 2022.

_____
JOEY GEORGE
Defendant

_____
MOHAMMAD ALI HAMOUDI
Attorney for Defendant

~~GREGORY GEIST~~
~~Attorney for Defendant~~

_____
THOMAS M. WOODS
Assistant United States Attorney

_____
REBECCA S. COHEN
Assistant United States Attorney

Plea Agreement - 14
United States v. George, CR22-109-RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970