THE HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR22-109-RSM |
| Plaintiff, | ) | |
| vs. | ) | MR. GEORGE'S SENTENCING MEMORANDUM |
| JOEY GEORGE, | ) | |
| Defendant. | ) | |

## I.     INTRODUCTION

Joey David George ("Joey"), an intellectually disabled person whose "cognitive ability" is "in the borderline rage with a Full Scale IQ of 72,"[1] and who "demonstrates numerous behaviors commonly associated with Autism Spectrum Disorder ("ASD"),"[2] through his attorney, respectfully requests that the Court impose a sentence of 12 months and 1 day, followed by 3 years of supervised release with conditions that help him manage his disability and offer him the opportunity to establish stable independent living.

The request is 6 months shorter than the thoughtful recommendation written by the United States Probation Office ("USPO"), which conducted a thorough and complete examination of the nature and circumstances of the offense and Joey's personal history and characteristics.[3] The difference may not mean much in other

---

[1] PSR ¶ 82.
[2] PSR ¶ 81.
[3] USPO Rec. (dated Dec. 1, 2022).

MR. GEORGE'S SENTENCING MEMORANDUM - 1
(*U.S. v. George*, CR22-109-RSM)

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

sentencings before this Court, but will be of significant consequence to Joey, who has never been arrested, charged with a crime, or incarcerated and is currently enduring unique hardships at the Federal Detention Center ("FDC") given his disabilities—disabilities that are not disputed by anyone. The short additional time in jail will allow the Probation Office to prepare to help Joey manage his disabilities, get services from the state of Washington, and establish stable independent living.

## II.   DISCUSSION

### A.   Sentencing Framework

The advisory sentencing guidelines are merely "one factor among the § 3553(a) factors that are to be taken into account in arriving at an appropriate sentence." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). "[T]he history and characteristics of the defendant" are considered alongside "the nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1). "The overarching statutory charge for a district court is to 'impose a sentence sufficient, but not greater than necessary' to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; [and] to protect the public[.]" *Carty*, 520 F.3d at 991.

The Presentence Investigation Report ("PSR") has calculated an advisory sentencing guidelines total offense level of 16, resulting in a sentencing range of 21 to 27 months. The Probation Office, however, recognizes that the advisory sentencing guidelines range is too high and has recommended this Court impose a sentence of 18 months of custody to be followed by 3 years of supervised release to "reasonably address [Joey's] conduct, ensure the safety of the community, and provide [Joey] with the necessary correctional treatment he needs."[4]

---

[4] USPO Rec. at 4; *see also* PSR ¶ 83 (Dr. Evan Freedman's proposed treatment or intervention to reduce risks of recidivism).

MR. GEORGE'S SENTENCING MEMORANDUM - 2
(*U.S. v. George*, CR22-109-RSM)

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

A thorough and fair consideration of all the § 3553(a) factors shows that the recommendation of 12 months and 1 day in custody and 3 years of supervised release is merited here.

### B. Joey David George's Personal History and Characteristics[5]

Joey's personal history and characteristics weigh strongly in favor of a sentence of 12 months and a day. Joey was born into and raised in "an undeniably chaotic and traumatic environment."[6] Because of his cultural background, he was isolated, removed from school after finishing elementary school, and taught not to associate with students from other cultural backgrounds.[7]

Through no fault of his own, he was taken out of school and deprived of the protections provided to him under laws for persons with disabilities.[8] The consequences were devastating for him because he lost the opportunity to receive diagnoses for intellectual disability and ASD early on in his developmental years so that he could receive services and support from the state.[9]

Rather than receive such support, including services from agencies like Child Protective Services ("CPS")[10] or protection from mandated reporters,[11] he was exposed to unimaginable trauma. As the USPO reports, he received a perfect score on the Adverse Child Experiences ("ACEs") examination administered by the office, a score which the Centers for Disease Control and Prevention ("CDC") concludes establishes a

---

[5] The following facts are derived from the PSR. The accuracy and reliability was not objected to by the government. *See* PSR Objections.
[6] USPO Rec. at 3.
[7] *Id.*
[8] The Individuals with Disabilities Education Act (IDEA); Section 504 of the Rehabilitation Act; and Title II of the Americans with Disabilities Act (ADA).
[9] https://www.k12.wa.us/student-success/special-education/family-engagement-and-guidance/eligibility-special-education (last accessed Dec. 6, 2022).
[10] https://www.dcyf.wa.gov/services/child-welfare-system/cps (last accessed Dec. 6, 2022).
[11] *See* RCW 26.44.030 (Reports—Duty and authority to make).

MR. GEORGE'S SENTENCING MEMORANDUM - 3
(*U.S. v. George*, CR22-109-RSM)

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

nexus between negative behavioral experiences and adverse health outcomes.[12] Those negative behavioral experiences and adverse outcomes exist in this case.

As also reported by the USPO, during his developmental years, his family moved "approximately ten"[13] times because of his father's actions, instability that made it impossible for him to succeed as an adult.[14] Even after his father's death, other family members "introduced more chaos"[15] and trauma into his life by allowing "strangers" to subject the family to abuse. It is no small wonder that Joey, an intellectually disabled person who is on the spectrum, has been "calling crisis lines and suicide hot lines for eight or nine years"[16] and suffers from severe "post-traumatic stress disorder," all of which has caused him to disassociate from the real world.[17] A renowned expert, whose opinions have been explicitly endorsed by the United States Attorney, states:

> Dissociation is the essence of trauma…Flashbacks and reliving are in some ways worse than the trauma itself…If elements of the trauma are replayed again and again, the accompanying stress hormones engrave those memories ever more deeply in the mind. Ordinary, day-to-day events become less and less compelling. Not being able to deeply take in what is going on around them makes it impossible to feel fully alive. It becomes harder to feel the joys and aggravations of ordinary life, harder to concentrate on the tasks at hand. Not being fully alive in the present keeps them more firmly imprisoned in the past.

van der Kolk M.D., Bessel, *The Body Keeps the Score*, Viking Publications, 2014, at 66–67.[18]

---

[12] PSR ¶¶ 85–87.
[13] USPO Rec. at 3.
[14] *Moving Repeatedly in Childhood Associated with Poorer Quality of Life Years Later*, American Psychological Association, 2010, https://www.apa.org/news/press/releases/2010/06/moving-well-being.
[15] USPO Rec. at 3.
[16] PSR ¶ 78.
[17] *Id.*
[18] *United States v. Antonio Diego Brugnoli-Baskin*, No. MJ22-499-MAT-LK (W.D. Wash.), Dkt. 27, United States Motion to Appeal Release Order (dated Oct. 25, 2022) at 10; *see also id.*, 2022 WL 16636429 *6 (same) (King L.).

MR. GEORGE'S SENTENCING MEMORANDUM - 4
(*U.S. v. George*, CR22-109-RSM)

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

Joey disassociated from reality because of all kinds of abuse: "For years, Mr. George experienced his family mocking him and calling him derogatory names."[19] The Probation Office reports that "[t]hey mocked him because he was 'different.' They called him 'faggot' and 'retard,'[20] and his cousins would rub their genitals on him."[21]

### C.   The Remaining 18 U.S.C. § 3553(a) Factors Support a Sentence of Time Served.

In arriving at a sentence that is "sufficient but not greater than necessary" to comply with the purposes of federal sentencing, this Court needs to consider a number of other factors, including: (1) the nature and circumstances of the offense; and (2) the need for the sentence imposed (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, (b) to afford adequate deterrence to criminal conduct, and (c) to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a). The following is a discussion of how those factors, the most relevant ones here other than his personal history and characteristics discussed above, support a sentence of 12 months and a day.

#### 1.   The Nature and Circumstances of the Offense

The nature and circumstances of the offense weigh strongly in favor of a sentence of 12 months and a day. Given the lifelong conditions he endured, Joey, an intellectually disabled person with ASD, "disassociat[ed]" into his room, into a world of addiction, a world untethered from reality. To provide the Court some context as to what this disassociated world actually looks like for persons with disabilities like Joey,

---

[19] USPO Rec. at 3.
[20] The term is used here to provide accurate context of Joey's life experiences. The correct and appropriate term is "intellectually disabled," a term which replaced "mental retardation," in 2010 following passage of Rosa's Law. *See* Public Law 111-256 available at https://www.govinfo.gov/content/pkg/PLAW-111publ256/pdf/PLAW-111publ256.pdf (last accessed Dec. 7, 2022).
[21] PSR ¶ 67.

MR. GEORGE'S SENTENCING MEMORANDUM - 5
(*U.S. v. George*, CR22-109-RSM)

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

the following is a picture of Joey's room at the time of his arrest, a picture never independently obtained by the government:



As the USPO reported early on in this case, like a child, Joey collects "Hot Wheels and Star Wars memorabilia," which he places on display in his bedroom.[22]

There were initial indications that Joey was living with persons who themselves harbored racist beliefs. "Mr. John noted that Mr. George is a good kid, not violent, and not causing trouble, like **some minorities.**"[23] Those indications were confirmed by the USPO: "Because of his culture, he grew up in a racist environment, and was 'raised to hate.' He said he was 'saying the N-word at 2 or 3 years old.'"[24] He was not only abused but taught racist ideology by those tasked with raising him and caring for him.

---

[22] Pretrial Services Report at 3 (dated July 25, 2022).
[23] *Id.* at 2.
[24] PSR ¶ 70.

MR. GEORGE'S SENTENCING MEMORANDUM - 6
(*U.S. v. George*, CR22-109-RSM)

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

1    As reported by the USPO, he further disassociated from reality by watching
2    "Fox News ten hours a day."[25] As Nicholas Confessore of the New York Times reports,
3    representatives from the Fox News channel traffic in ideology once "caged in a dark
4    corner of American life."[26] These so called "dog whistles" were perpetuated by the
5    news channel as it created artificial tension and division between the legitimate and
6    abhorrent harms suffered by both Asian and Black persons in the United States. Joey
7    bought into this false equivalency, a false narrative that motivated him to make the
8    phone calls in this case.
9    The following is one illustrative example of what Joey was hearing on Fox News
10   during this period of time: "This may be a lot of things, this moment we are living
11   through, but it is definitely not about black lives and remember that when they come for
12   you, and at this rate, they will."[27] To add to his confusion, Joey's mother had previously
13   been "a victim of an assault" by a person of color.[28]
14   Against the backdrop of Joey's individual personal history, experiences, and
15   characteristics, beginning in September 2021, and continuing until law enforcement
16   intervention in July 2022, he made racially motivated threats via telephone to several
17   businesses. In September 2021, Joey called a marijuana dispensary in Maryland, and
18   threatened to kill all of the African American people at the business. The police officer

---

[25] PSR ¶ 24.
[26] https://www.npr.org/2022/05/12/1098488908/has-tucker-carlson-created-the-most-racist-show-in-the-history-of-cable-news (last accessed Dec. 7, 2022); *see also* Confessore, Nicholas, *How Tucker Carlson Stoked White Fear to Conquer Cable,* the New York Times, April 30, 2022, available at https://www.nytimes.com/2022/04/30/us/tucker-carlson-gop-republican-party.html (last accessed Dec. 7, 2022).
[27] https://www.washingtonpost.com/nation/2020/06/09/fox-black-lives-carlson/ (last accessed Dec. 7, 2022).
[28] USPO Rec. at 5.

MR. GEORGE'S SENTENCING MEMORANDUM - 7
(*U.S. v. George*, CR22-109-RSM)

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

called Joey back and talked to him about what he said, observing he "…was mentally off or just vengeful…."[29]

On the same day, Joey called a Denny's restaurant in Connecticut and made similar threats. The local prosecutor involved with investigating that case concluded that "the comments George made did not constitute a true threat according to statute."[30]

In January 2022, Joey called a marijuana dispensary in Seattle, Washington, and told the employee who answered that he (Joey) carried a gun and would go to the business and shoot any Black people who were there at the time of his arrival.

In May 2022, Joey called a Shari's restaurant and threatened to shoot any Black or Hispanic patrons in the restaurant if it did not close within 20 minutes. When law enforcement called Joey back and talked to him and investigated the matter, they assessed that "there was no imminent danger or threat to life."[31]

In July 2022, Joey called a Tops grocery store in Buffalo, New York, and threatened to shoot and kill all of the Black people in the store, including the children and babies. This threat was made two months after the racially motivated shooting at a Tops grocery store in Buffalo, in which ten Black people were shot and killed. It did not involve the same store. The person who took the call felt threatened, but also reported "to me he seemed like a religious nut," and "I was talking to him for so long that I expected it to be a joke."[32] The recipient also corroborated Joey's report about the influences of Fox News on his thinking: "He told me you should know who [Christina Lee] is, she's famous. She gotten beat up by a black guy and nobody did anything. He

---

[29] Dkt. 36-3, Maryland Police Report.
[30] Dkt. 36-4, Connecticut Police Report.
[31] Dkt. 36 at 4, FBI Threat Assessment.
[32] Dkt. 36-1, Buffalo Police Report; *see also* https://www.foxnews.com/media/nyc-liberal-da-alvin-bragg-christina-yuna-lee-murder-safir (last accessed Dec. 7, 2022).

MR. GEORGE'S SENTENCING MEMORANDUM - 8
(*U.S. v. George*, CR22-109-RSM)

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

said you don't know who that is because the media wants to sweep all the Asian hate crimes under the rug." *Id.*

After factual, constitutional, and mental health issues were raised with respect to these offenses, the United States Attorney offered and agreed to enter into a plea agreement whereby they would dismiss Counts 2, 3, and 4 under the Indictment in exchange for Joey pleading to two offenses.[33] The two offenses did not involve actual violence; Joey has never attempted to obtain a firearm nor attempted to leave Lynwood to travel by car[34] or plane, and his actions are described by the USPO as "not sophisticated" and "impulsive."[35] The USPO interviewed a family member early on who "described [Joey] as a smart, but 'childlike' adult" during the time when these offenses were committed.[36] At the time of the offense, he was receiving mental health treatment for PTSD. The provider reports: "at no point during my interactions with him did I witness any behaviors or comments that were concerning for Mr. George being a danger to himself or others."[37] However, Joey stopped going to treatment "because it was too difficult to attend appointments because he did not drive," and because appointments were frequently canceled.[38]

But once Joey sat down and spoke to his attorney, who happens to be a person of color, and was provided perspective about his behavior, thinking, bad influences in his life, and the impact the phone calls had on other persons of color, he felt "sick to [his] stomach" when he realized what he had done.[39] He told the USPO the same thing: that it was "overbearing and sickening to hear" what he did and how he scared, threatened,

---

[33] Dkt. 41, Plea Agreement.
[34] Joey has never had a driver's license.
[35] USPO Rec. at 4.
[36] Pretrial Services Report at 3.
[37] Exhibit 1, Letter from Provider (under seal).
[38] PSR ¶ 80.
[39] PSR ¶ 24.

MR. GEORGE'S SENTENCING MEMORANDUM - 9
(*U.S. v. George*, CR22-109-RSM)

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

and marginalized communities who had recently been subject to a mass shooting when he made these calls.[40] He is amenable to change but he needs guidance that takes into account his cognitive limitations.

### 2. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment for the Offense

A sentence of 12 months and 1 day reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offenses given the impact the statements had on individuals and businesses who received the calls. Joey surely frightened people when he made those calls, specifically Black people. When he called, he told the individuals he had a firearm, suggesting to them that he was serious, which scared them further. However, some of the individuals and businesses did not take the calls seriously because it was apparent that Joey may have had mental health issues or was not a serious threat, as reflected in witness accounts and law enforcement threat assessments. More important, it is undisputed by all that Joey's unsophisticated actions were driven by his cognitive disabilities:

> Dr. Freedman conducted intellectual and neurological testing, which estimated Mr. George's "cognitive ability as being in the borderline range with a Full Scale IQ of 72." Dr. Freedman's evaluation indicated that "based on a reasonable degree of psychological certainty, Mr. George's intellectual and functional limitations constitute a substantial disability which likely impaired his capacity to understand and control his actions. His specific expression of intellectual deficits and mental disease appears directly relevant to the issue of criminal responsibility and to the choice of punishment in this case."

PSR ¶ 82.

Sentencing Joey, an intellectual disabled person with ASD, to a prison sentence that does not account for his limitations—limitations he was born with—is not only an unjust punishment but also promotes disrespect for the law because it is contrary to

---

[40] *Id.*

MR. GEORGE'S SENTENCING MEMORANDUM - 10
(*U.S. v. George*, CR22-109-RSM)

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

society's recognition that persons like Joey must be protected by courts. Congress,[41] the Supreme Court,[42] and Washington law[43] require Courts and the government to recognize and consider the institutional and penological impacts on persons with disabilities. Indeed, the United States Attorney has an obligation to protect Joey given his status as disabled person.[44] Thus, in measuring a sentence that reflects the seriousness of the offense, promotes respect for the law, and provides just punishment, the Court should absolutely consider the fact that Joey made threatening calls to a marginalized community that had been terrorized by a mass-shooter. But the Court should also consider the fact that Joey, too, is part of a marginalized community in need of protection. A proper balancing of both these interests supports a sentence of 12 months and a day.

### 3. The Need to Deter and the Need to Protect the Public from Further Crimes

As the Probation Office acknowledges, "[d]eterrence is difficult to predict" because the conduct at issue is inextricably intertwined with Joey's upbringing and mental health issues.[45] The reason deterrence is difficult to predict is best described by the late Justice Stevens, who observed "[a]s to deterrence, the same cognitive and behavioral impairments that make [intellectually disabled] defendants less morally culpable also make it less likely that they can process the information of the possibility of [punishment] and, as a result, control their conduct based upon that information."[46]

---

[41] *See* H.R.10 - Civil Rights of Institutionalized Persons Act (CRIPA), available at https://www.congress.gov/bill/96th-congress/house-bill/10 (last accessed Dec. 8, 2022); *see also* the Americans with Disabilities Act (ADA), available at https://www.ada.gov/ (last accessed Dec. 8, 2022).
[42] *Olmstead v. L.C.*, 527 U.S. 581 (1999); *Atkins v. Virginia*, 536 U.S. 304, 319 (2002).
[43] Chapter 388-823, Washington Administrative Code.
[44] 42 U.S.C. § 1997a; 42 U.S.C. § 12132.
[45] USPO Rec at 5.
[46] *Atkins*, 536 U.S. at 305.

MR. GEORGE'S SENTENCING MEMORANDUM - 11
(*U.S. v. George*, CR22-109-RSM)

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

Joey's ability to process insight and understanding as to his actions is impeded by his disabilities.

As to protecting the public, Joey has no criminal history; and history provides the best evidence as to recidivism. The United States Sentencing Commission reports that "[l]ess than one-third of Criminal History Category I offenders with zero points were rearrested" after committing their first federal offense.[47] Joey is in his 30s, which is another factor that indicates he is less prone to recommitting a crime. Importantly, the Sentencing Commission does not take into account the fact that he will be supervised by one of the top Probation Offices in the country or that he is intellectually disabled. Dr. Freedman opines that recidivism concerns must take into account Joey's mental status as well:

> Dr. Freedman proposes the following treatment or intervention to reduce a risk of recidivism in Mr. George's case: establish stable independent living environment, case management services, treatment to address inflexible thinking, addiction treatment, and medication management.

PSR ¶ 83. The Court should do the same in Joey's case.

### 4. The Need for the Sentence to Provide the Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner

Consistent with Dr. Freedman's recommendation, the Probation Office is confident that it can supervise Joey in the community: "A three-year term of supervised release will provide Mr. George with the correctional treatment he needs. During this time, he will be closely monitored by United States Probation to ensure the ongoing safety of the community."[48] "These interventions will reduce his risk of recidivism and are necessary components of his rehabilitation."[49] Joey spoke at great length to the

---

[47] https://www.ussc.gov/research/research-reports/criminal-history-and-recidivism-federal-offenders (last accessed Dec. 8, 2022).
[48] USPO Rec. at 5.
[49] *Id.*

MR. GEORGE'S SENTENCING MEMORANDUM - 12
(*U.S. v. George*, CR22-109-RSM)

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

Probation Office about the offense. Also implicit in the Probation Office's position as to supervision is the concern that Joey will suffer from unique harms given his intellectual disabilities.

In 2017, the Office of the Inspector General issued a report criticizing the Bureau of Prison's restrictive housing for inmates with mental illness like Joey.[50] The Inspector General found that inmates with mental illness were house in single-cell confinement for long periods of time, isolated from other inmates and with limited human contact.[51] Since the report was issued, the pandemic has had additional impacts on the Bureau of Prisons' ability to house inmates leading to long-term lockdowns and denial of basic services. The prisons are still recovering from these setbacks independent of the findings of the Inspector General.

"While at FDC SeaTac, [Joey] has seen a psychologist once a month, which he finds beneficial," but once a month is nowhere near the level of care he needs to receive correctional treatment in the most effective manner.[52] This is particularly true because he is intellectually disabled and thus vulnerable to being taken of advantage of by others—like those who have taken advantage of him since childhood and taught him terrible things about minority communities.

An equally damaging aspect of incarceration for Joey has to do with his ASD: "his significant deficits in social-emotional reciprocity, reactivity to sensory input, and highly restricted and fixated interests of abnormal intensity," and his sensitivity to touch and light. Prison is like a boot camp. Prisoners are told when to get up; they are told to get up early, and told to do so loudly. They are ordered to stay in lines and when to get food, and the lights are not turned out. Prison is a hostile place, a place where prisoners segregate themselves by race. There is always a risk of violence and uncertainty in

---

[50] https://oig.justice.gov/reports/2017/e1705.pdf (last accessed Dec. 8, 2022).
[51] *Id.*
[52] PSR ¶ 80.

MR. GEORGE'S SENTENCING MEMORANDUM - 13
(*U.S. v. George*, CR22-109-RSM)

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

prison. Each day Joey has spent in prison, he has suffered a pain that most people do not understand. The punishment that is imposed on him should acknowledge that Joey has suffered and will continue to suffer a unique pain in prison. That pain is not effective in helping him understand what he did wrong. That pain is an arbitrary and unnecessary pain.

### III.   CONCLUSION

Before concluding, a few observations need to be made. First, the government states that Joey "*appears* to have both intellectual and emotional challenges," as though these conditions are afterthoughts. Despite having received a copy of Joey's assessment well in advance of the draft presentencing report, the government never raised any objections as to its reliability either directly to defense counsel or the Probation Office under Federal Rule of Criminal Procedure 32. The findings were adopted by the Probation Office because, after they conducted an independent investigation of this matter, they reached the same results as reflected in their sentencing recommendation. It is telling that the government provides the Court a copy of the transcript for Joey's interview but not the video, because the video shows that Joey exhibits symptoms consistent with individuals who are intellectually disabled and have ASD. These are the symptoms that were relied on by Dr. Freedman and the Probation Office to reach their own independent conclusions, conclusions that were never challenged by the government.

Second, early on in this case, the media mischaracterized Joey by putting a picture of him in the press suggestive of Joey wearing military fatigues:

//

//

MR. GEORGE'S SENTENCING MEMORANDUM - 14
(*U.S. v. George*, CR22-109-RSM)

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100



This was a misleading suggestion. Joey was wearing a Super Mario Brothers t-shirt because he spends a great deal of time in his room, which is covered with toys on the wall, playing video games. The defense makes this point because it is likely that the media will take the transcript that the government attached to its sentencing memorandum and further mischaracterize an individual with disabilities like it has done in the past by taking snippets of statements from that transcript and using them as headlines without context or understanding. Such mischaracterizations cause collateral harm to persons like Joey whose names will be forever memorialized on the internet.

      For all the reasons provided in this memorandum, Joey respectfully asks the Court to impose a sentence of 12 months and 1 day, to be followed by 3 years of supervised release

      DATED this 9th day of December 2022.

Respectfully submitted,

s/ *Mohammad Ali Hamoudi*
Assistant Federal Public Defender
Attorney for Joey George

MR. GEORGE'S SENTENCING MEMORANDUM - 15
(*U.S. v. George*, CR22-109-RSM)

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100